IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GIFT SURPLUS, LLC, and NO LIMIT GAMES LLC, | ) ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:22-CV-148 |
| | ) | |
| STATE OF NORTH CAROLINA ex rel. ROY COOPER, GOVERNOR, in his official capacity, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The plaintiff Gift Surplus operates a video sweepstakes that is illegal under North Carolina law, and the plaintiff No Limit Games develops and sells software for video sweepstakes. After years of state-court litigation contesting whether North Carolina law prohibited Gift Surplus' sweepstakes, the plaintiffs now challenge the constitutionality of the state law making it a crime to operate certain video sweepstakes, including the one offered by Gift Surplus. They contend that the statute on its face violates the First Amendment and is unconstitutionally vague under the Fourteenth Amendment's Due Process Clause.

The Court has subject matter jurisdiction, and the plaintiffs' claims are not precluded by the state court litigation. The North Carolina statute does not violate the First Amendment because it regulates nonexpressive conduct and not speech. Nor is the

law unconstitutionally vague; the statute's prohibitions are very broad and prohibit most video sweepstakes, but they are clear

## I.     The Plaintiffs

There are two plaintiffs in this suit—Gift Surplus and No Limit Games. Gift Surplus operates an online retail store, Doc. 31 at ¶ 19, which it promotes with a video sweepstakes. *Id.* at ¶¶ 26, 47. Customers can buy gift cards from a kiosk, typically placed inside another business establishment, to redeem at Gift Surplus' online store. *Id.* at ¶¶ 48–50, 55. The purchase comes with the opportunity to enter a video sweepstakes by playing a video game that is a "simulated, but fake, gambling experience," and potentially winning a prize. *Id.* at ¶¶ 54–56, 59, 65. It is also possible to enter the sweepstakes and play the game without buying a gift card. *Id.* at ¶¶ 57, 69. The video sweepstakes in its current form is illegal under North Carolina law. *See Gift Surplus, LLC v. State ex rel. Cooper*, 380 N.C. 1, 15, 868 S.E.2d 20, 30 (2022) (hereinafter *Gift Surplus I*); *see also* discussion *infra* at 7.

No Limit Games develops and sells software for video-sweepstakes promotions. Doc. 31 at ¶¶ 9–10. Its customers are e-commerce businesses that operate in North Carolina and use promotional sweepstakes to attract customers to their e-commerce platforms. *Id.* at ¶¶ 9, 28.

## II.     The Statute

In 2010, the North Carolina General Assembly enacted the statute at issue, N.C. Gen. Stat. § 14-306.4, "[i]n response to . . . perceived loopholes," in its laws that banned all video gaming machines offering games of chance, such as video poker. *Gift Surplus I,*

2

380 N.C. at 3–4. In passing the law, the state legislature noted that "companies have developed electronic machines and devices to gamble through pretextual sweepstakes," and that "such electronic sweepstakes systems . . . create the same encouragement of vice and dissipation as other forms of gambling . . . by encouraging repeated play, even when allegedly used as a marketing technique." Act of July 20, 2010, N.C. Sess. Law 2010-103, pmbl.

Section 14-306.4 makes it unlawful, *inter alia*, "for any person to operate, or place into operation, an electronic machine or device" to "[c]onduct a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize." § 14-306.4(b). The statute "prohibits the operation of sweepstakes conducted through video games of chance," *Gift Surplus I*, 380 N.C. at 2, and is intended "to prohibit any mechanism that seeks to avoid [its] application . . . through the use of any subterfuge or pretense whatsoever." § 14-306.4(c).

The scope of the statute is governed by its relevant terms. An "electronic machine" is "a mechanically, electrically or electronically operated machine or device, . . . . that is intended to be used by a sweepstakes entrant, that uses energy, and that is capable of displaying information on a screen or other mechanism." § 14-306.4(a)(1). A "sweepstakes" is "any game, advertising scheme or plan, or other promotion, which, with or without payment of any consideration, a person may enter to win or become eligible to receive any prize, the determination of which is based upon chance." § 14-306(a)(5). And, as is relevant here, an "entertaining display" is "visual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game

3

play," which includes any "video game not dependent on skill or dexterity that is played while revealing a prize as the result of an entry into a sweepstakes." § 14-306.4(a)(3).

Interpreting § 14-306.4, the North Carolina Supreme Court has held that a "sweepstakes conducted through the use of an entertaining display" is only prohibited "when the electronic display takes the form of actual game play, or simulated game play where the game in question is not dependent on skill or dexterity." *Gift Surplus I*, 380 N.C. at 9 (cleaned up). If a video-sweepstakes participant plays a video game of chance "while revealing a prize as the result of an entry into a sweepstakes," then the video sweepstakes is unlawful. § 14-306.4(a)(3)(i).

To determine whether a video game used in the operation of a video sweepstakes is one of chance or one of skill or dexterity, the North Carolina Supreme Court consistently applies the "predominant-factor" test. *See Gift Surplus I*, 380 N.C. at 11–12; *Crazie Overstock Promotions, LLC v. State*, 377 N.C. 391, 403, 858 S.E.2d 581, 589 (2021); *Sandhill Amusements, Inc. v. Miller*, 368 N.C. 91, 91, 773 S.E.2d 55, 56 (2015) (per curiam) (adopting dissent's reasoning in *Sandhill Amusements, Inc. v. Sheriff of Onslow Cnty.*, 236 N.C. App. 340, 369–70, 762 S.E.2d 666, 685–86 (2014) (Ervin, J., dissenting)); *see also State v. Stroupe*, 238 N.C. 34, 38, 76 S.E.2d. 313, 316–17 (1953) (discussing the test to determine if a type of a game of pool is a game of chance). In the context of § 14-306.4, the "predominant-factor" test asks "whether, viewed in its entirety, the results produced by [the electronic gaming device] in terms of whether the player wins or loses and the relative amount of the player's winnings or losses varies primarily

4

with the vagaries of chance or the extent of the player's skill and dexterity." *Crazie Overstock*, 377 N.C. at 403; *see also Gift Surplus I*, 380 N.C. at 10.

## III.    State Court Litigation

Section 14-306.4 has been the subject of state-court litigation since its enactment, some by Gift Surplus, one of the plaintiffs here, and some by other video-sweepstakes operators. The earliest case, brought by a litigant who is not a party to this case, concerned the First Amendment, and later challenges were directed to whether particular video sweepstakes violated the statute.

Soon after the state legislature enacted § 14-306.4, video-sweepstakes operators challenged the statute under the First Amendment, contending the video games used to announce sweepstakes results on their machines were protected speech. *See Hest Techs., Inc. v. State ex rel. Perdue*, 366 N.C. 289, 296, 749 S.E.2d 429, 434–35 (2012), *cert. denied*, 517 U.S. 822 (2013). In 2012, the North Carolina Supreme Court held that the statute did not violate the First Amendment, determining that the statute primarily regulated noncommunicative conduct—operating, or placing into operation, an electronic machine to run a video sweepstakes—rather than protected speech. *Id.*

The court also held that even if it determined the statute burdened some speech, the statute would not violate the First Amendment under the four-factor test from *United States v. O'Brien*, 391 U.S. 367 (1968). *Hest*, 366 N.C. at 300–01. First, North Carolina had the constitutional police power to regulate health, safety, and welfare concerns presented by gambling-like operations. *Id.* at 301. Second, North Carolina had an important and substantial interest in combatting the social ills of gambling-like activities.

5

*Id.* Third, that interest was unrelated to suppression of free expression, which was clear since the statute only banned video games when used as a conduit for sweepstakes. *Id.* And fourth, the restriction on any speech was no greater than necessary since the statute only regulated video sweepstakes that encouraged addictive, gambling-like play through video display. *Id.*

In 2013, Gift Surplus and another company sought a declaratory judgment that § 14-306.4 did not prohibit the specific video sweepstakes offered by Gift Surplus, as well as injunctive relief blocking enforcement of the statute against its game kiosks. *See Sandhill Amusements, Inc. v. Sheriff of Onslow Cnty.*, No. 13-CVS-3705, 2013 WL 9982034, at *2 (N.C. Super. Ct. Nov. 4, 2013); *see also Gift Surplus I*, 380 N.C. at 5. The trial court granted a preliminary injunction blocking enforcement of the statute, *Sandhill Amusements*, 2013 WL 9982034, at *2–4, and a divided panel of the North Carolina Court of Appeals affirmed. *Sandhill Amusements*, 236 N.C. App. at 353–54. In 2015, the North Carolina Supreme Court reversed and remanded, adopting the dissenting opinion in the court of appeals, which reasoned the plaintiffs were unlikely to succeed on the merits because chance predominated over skill in the game used as part of the sweepstakes. *Sandhill Amusements*, 368 N.C. at 91 (adopting dissent's reasoning in *Sandhill Amusements*, 236 N.C. App. at 369–70 (Ervin, J., dissenting)).

After remand, Gift Surplus modified its game and amended its complaint, again seeking injunctive relief and a declaratory judgment that its revised sweepstakes did not violate the law. *See Gift Surplus, LLC v. State*, No. 13-CVS-3705, 2018 WL 8193439, at *1, 7 (N.C. Super. Ct. Feb. 2, 2018). After a trial, the trial court found that the revised

6

game and sweepstakes did not violate the law because skill predominated over chance. *Id.* at *4–5, 8. The court issued a permanent injunction prohibiting the State from enforcing the law against Gift Surplus. *Id.* at *8–9. The North Carolina Court of Appeals reversed, *Gift Surplus, LLC v. State ex rel. Cooper*, 268 N.C. App. 1, 6, 833 S.E.2d 703, 706 (2019), and the case went to the North Carolina Supreme Court.

While the appeal was pending, the North Carolina Supreme Court held that a different company's video sweepstakes violated § 14-306.4. *See Crazie Overstock*, 377 N.C. at 405. As with Gift Surplus' game in its 2015 decision, the court held that the video sweepstakes used a game in which chance predominated over skill. *Id.* at 403–05.

In February 2022, the North Carolina Supreme Court held that the revised Gift Surplus game and video sweepstakes also violated the statute. *Gift Surplus I*, 380 N.C. at 15. The court found that the statute only prohibited sweepstakes using video games of chance but concluded Gift Surplus' game was unlawful because chance predominated over skill. *Id.* at 9, 12–15. Specifically, the court decided that the video game fundamentally depended on chance because a set percentage of players could not play for certain prizes regardless of their skill or dexterity, and skill and dexterity played no more than a *de minimis* role in the game regardless. *Id.* at 14–15.

## IV.    Procedural Background in this Court

Shortly after the North Carolina Supreme Court's decision in *Gift Surplus I* in February 2022, Gift Surplus filed this suit against the State Defendants, Doc. 1, along

with a motion for a temporary restraining order and preliminary injunction.[1]  Doc. 5.  The Court denied the motion for a temporary restraining order and ordered supplemental briefing on the motion for a preliminary injunction.  Doc. 22 at 33; Doc. 23.  In March 2022, No Limit Games joined Gift Surplus as a plaintiff with the filing of an amended complaint, Doc. 31, and joined Gift Surplus' motion for preliminary injunction.  Doc. 34. The State has also filed a motion to dismiss the plaintiffs' amended complaint.  Doc. 35.

After briefing was complete, the parties agreed in open court that there was no need for discovery or a trial as to all issues except whether No Limit Games has standing and whether No Limit Games is in privity with Gift Surplus, if it became necessary to resolve those issues  Doc. 42 at 8–9.  As to all other issues, the parties consented to convert the State's motion to dismiss to a motion for summary judgment and agreed the Court could consider an oral motion by the plaintiffs for summary judgment made in open court.  *Id.* at 10–11 (giving oral notice pursuant to Fed. R. Civ. P. 56(f)).

## V.     Sovereign Immunity

The plaintiffs have filed suit against, *inter alia*, Governor Roy Cooper in his official capacity, North Carolina Attorney General Joshua Stein in his official capacity, and the North Carolina Secretary of Public Safety Eddie Buffaloe, Jr. in his official capacity.  Doc. 31 at ¶¶ 11–13.  Generally, state officials are immune from suit in federal court under the Eleventh Amendment, but the *Ex parte Young* exception permits suits

---

[1] The State Defendants include Governor Roy Cooper in his official capacity, North Carolina Attorney General Joshua Stein in his official capacity, the North Carolina Department of Public Safety, North Carolina Secretary of Public Safety Eddie Buffaloe, Jr. in his official capacity, the Alcohol Law Enforcement Division, and Director of the Alcohol Law Enforcement Division Bryan House in his official capacity.  Doc. 31.

"for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)). This exception applies only to officials with "some connection with the enforcement of the act." *S.C. Wildlife Fed. v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008) (cleaned up); *accord Ex parte Young*, 209 U.S. at 157.

The State contends that defendants Governor Cooper, Attorney General Stein, and Secretary of Public Safety Buffaloe, Jr. "lack special enforcement authority" for § 14-306.4, and thus the plaintiffs' claims against those state officials in their official capacity are barred under the Eleventh Amendment. Doc. 36 at 18–19. The plaintiffs have not contended otherwise, and they do not oppose dismissal of these defendants. *See* Doc. 42 at 94–95; Doc. 40 at 10 n.4. The plaintiffs' claims against those defendants in their official capacity are barred by the Eleventh Amendment and will be dismissed.

## VI.    *Rooker-Feldman*

The State challenges subject matter jurisdiction under *Rooker-Feldman*, contending that Gift Surplus is attempting to obtain federal district court review of a state court judgment. Doc. 36 at 12–14. The jurisdictional doctrine "takes its name from the only two cases in which the Supreme Court has. . . foreclose[d] district court jurisdiction over suits that were, in essence, appeals from state-court judgments." *Hulsey v. Cisa*, 947 F.3d 246, 249–50 (4th Cir. 2020) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)).

Under the *Rooker-Feldman* doctrine, lower federal courts are barred from exercising *de facto* appellate jurisdiction over state-court judgments. *See Johnson v. De*

9

*Grandy*, 512 U.S. 997, 1005–06 (1994). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-Feldman* doctrine stems from Congress' "careful assignment of federal subject matter jurisdiction, allocating original jurisdiction to the district courts . . . while allocating appellate jurisdiction over final state court judgments to the Supreme Court." *Thana v. Bd. of License Comm'rs for Charles Cnty.*, 827 F.3d 314, 318–19 (4th Cir. 2016).

The *Rooker-Feldman* doctrine applies narrowly, *see Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (emphasizing *Rooker-Feldman*'s narrow application), and "assesses only whether the process for appealing a state court judgment . . . has been sidetracked by an action filed in a district court specifically to review that state court judgment." *Thana*, 827 F.3d at 320; *see also Hulsey*, 947 F.3d at 251. If a federal plaintiff presents an independent claim, *Rooker-Feldman* does not deprive a federal district court of subject matter jurisdiction. *See Exxon Mobil Corp.*, 544 U.S. at 293; *Skinner*, 562 U.S. at 532.

*Rooker-Feldman* does not apply to the plaintiffs' claims. The plaintiffs may disagree with the North Carolina Supreme Court's decision that Gift Surplus' game violates § 14-306.4, but they have not asked the Court to review and reject the North Carolina Supreme Court's judgment that Gift Surplus' video sweepstakes is illegal under the statute. Rather, they make a facial challenge to the law's constitutionality. *See* Doc. 31 at 63, 66. Indeed, their vagueness claim depends on the North Carolina Supreme

Court's interpretation of the statute, which is the opposite of asking this court to reject the state court's view. Where, as here, a plaintiff has not invited specific review and rejection of a state court judgment, *Rooker-Feldman* does not apply. *See Exxon Mobil Corp.*, 544 U.S. at 284; *Thana*, 827 F.3d at 320; *Hulsey*, 947 F.3d at 251.

The State's arguments to the contrary are not persuasive. The State contends *Rooker-Feldman* applies because the plaintiffs' claims are "inextricably intertwined" with adverse state-court decisions for which they now seek review. Doc. 29 at 7; Doc. 36 at 13–14. But *Rooker-Feldman* does not apply due to "mere overlap between state-court litigation and the plaintiff's claim." *Hulsey*, 947 F.3d at 251. That the plaintiffs' constitutional claims challenge § 14-306.4 as construed by the North Carolina Supreme Court is not enough. *See Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718–19 (4th Cir. 2006) (explaining *Rooker-Feldman* only applies when challenging the prior state-court decision itself).

## VII. Claim Preclusion and Issue Preclusion

The State contends that Gift Surplus cannot pursue its constitutional claims in this court because it could have and should have asserted those claims in its state-court lawsuit, and it already litigated its game's legality. Doc. 29 at 1–2, 5; Doc. 36 at 14–15. But the plaintiffs' constitutional claims were not raised in prior state-court pleadings or properly predicated upon them, and they challenge a distinct wrong leading to a distinct injury rather than the claims asserted in prior state-court litigation. Neither claim preclusion nor issue preclusion applies.

11

Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Here, North Carolina law governs preclusion issues. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *In re Heckert*, 272 F.3d 253, 257 (4th Cir. 2001).

"The doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) are companion doctrines" that serve "the dual purposes of protecting litigants from the burden of relitigating previously decided matters and promoting judicial economy by preventing needless litigation." *Williams v. Peabody*, 217 N.C. App. 1, 5, 719 S.E.2d 88, 92 (2011) (cleaned up). Claim preclusion and issue preclusion are not jurisdictional doctrines—they are affirmative defenses that a defendant must plead and prove. *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008); *Morgan v. N.C. Dep't of Health & Human Servs.*, 421 F. Supp. 2d 890, 893 n.2 (W.D.N.C. 2006) (noting preclusion is not a jurisdictional matter).

### A. Claim Preclusion

Claim preclusion applies when "a prior adjudication on the merits in a prior suit bars a subsequent, identical cause of action between the same parties or their privies," and also "prevents relitigation of claims that in the exercise of reasonable diligence, could have been presented for determination in the prior action." *Orlando Residence, Ltd. v. All. Hosp. Mgmt, LLC*, 375 N.C. 140, 150–51, 846 S.E.2d 701, 708 (2020) (cleaned up). For the defense to apply, the State must show three things: "(1) a final judgment on the

merits in an earlier suit, (2) an identity of the cause[s] of action in both the earlier and the later suit, and (3) an identity of [the] parties or their privies in the two suits." *State ex rel. Utils. Comm'n v. Thornburg*, 325 N.C. 463, 468, 385 S.E.2d 451, 453–54 (1989) (cleaned up).

Here, it is undisputed that there was a final judgment on the merits in the prior state-court litigation and that the plaintiff, Gift Surplus, and the defendants are the same. *See Gift Surplus I*, 380 N.C. at 2. Thus, whether claim preclusion bars Gift Surplus' constitutional claims depends on the identity of the causes of action in the prior state-court litigation and in this suit.

Many states "bar a subsequent lawsuit if its claims arise out of the same core of operative facts that led to the initial lawsuit," but North Carolina courts apply claim preclusion "more narrowly than most federal and state courts." *Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 391 (M.D.N.C. 2004). Under North Carolina law, claim preclusion "prevents the relitigation of all matters that were or should have been adjudicated in the prior action," *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004) (cleaned up), but it does not preclude a second action based on claims not raised by or properly predicated upon the pleadings in the first lawsuit. *See Intersal, Inc. v. Hamilton*, 373 N.C. 89, 107–08, 834 S.E.2d 404, 417–18 (2019); *Bockweg v. Anderson*, 333 N.C. 486, 492, 428 S.E.2d 157, 161–62 (1993).

For example, in a case where the plaintiff filed a second lawsuit seeking damages for a separate and distinct injury arising from different wrongful conduct that occurred

13

during the same hospitalization giving rise to the earlier lawsuit, the North Carolina Supreme Court allowed the subsequent action to proceed. *See Bockweg*, 333 N.C. at 493–94; *see also Davenport v. N.C. Dep't of Transp.*, 3 F.3d 89, 95–96 (4th Cir. 1993) (applying North Carolina law and noting "North Carolina courts . . . give weight in assessing the breadth of claims for res judicata purposes to the existence of differences in the discrete legal rights, remedies, and violations alleged in successive actions"). By contrast, in *Orlando Residence*, a litigant was barred from bringing crossclaims to determine the overall percentage of his ownership interest in a company when he had not pursued such a determination in an earlier case in which he sought a declaratory judgment defining his ownership interest in the company. 375 N.C. at 150–52.

Here, there is nothing to indicate that the pleadings in Gift Surplus' state lawsuit, either as originally pled or as amended, raised any constitutional challenge to § 14-306.4 or that Gift Surplus could have properly predicated their constitutional claims upon those pleadings.[2] The state-court litigation was a challenge to enforcement of § 14-306.4 against allegedly legal conduct and the injury stemming from that wrongful enforcement. *See Gift Surplus I*, 380 N.C. at 2–3. In other words, Gift Surplus asserted only that its games did not violate the statute. But in this suit, Gift Surplus accepts that its game

---

[2] The State, which has the burden of establishing claim preclusion, *see Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 679, 657 S.E.2d 55, 62 (2008), has not provided copies of any of the state court complaints, but it has not contended that Gift Surplus raised such claims in those complaints. And nothing in the state court opinions indicates any constitutional question was raised by the pleadings or could be properly predicated upon them.

14

violates the law and instead has raised facial constitutional challenges based on the First Amendment and vagueness. *See* Doc. 31 at 63–68.

Nor do the usual policy reasons supporting claim preclusion apply. Claim preclusion protects litigants from the burden of relitigating previously decided matters, *see Bockweg*, 333 N.C. at 491, but here the same issues are not being relitigated. The doctrine in general also promotes judicial economy by preventing needless litigation, *see id.*, but here, under the applicable state procedure for resolving facial constitutional challenges to state statutes, *see, e.g.*, N.C. R. Civ. P. 42(b)(4); N.C. Gen. Stat. § 1-267.1(a1), Gift Surplus would not have been able to address any constitutional claims until its arguments about whether it was violating the statute had been resolved. *See generally Pittston Co. v. United States*, 199 F.3d 694, 704–05 (4th Cir. 1999) (applying federal claim preclusion law and persuasively discussing the policy reasons a later constitutional challenge was not barred by claim preclusion).[3]

It may well be that Gift Surplus could have brought one or both of its constitutional challenges when it filed suit in state court or amended its complaint after modifying its games. The State contends that is enough for claim preclusion to apply, relying on broad language in some decisions by the North Carolina Court of Appeals.

---

[3] There does not appear to be a clear consensus under federal and other state law as to whether claim preclusion bars a second lawsuit on constitutional grounds when the first lawsuit did not assert a facial constitutional challenge. The cases tend to turn on specific facts rather than on a black-letter rule. *Compare Pittston Co.*, 199 F.3d at 704–05 (not barred); *Feliciano v. Tribunal Supremo de Puerto Rico*, 78 F. Supp. 2d 4, 15–16 (D.P.R. 1999) (not barred); *Cheshire Bridge Holdings, LLC v. City of Atlanta*, 777 F. App'x 310, 318–22 (11th Cir. 2019) (not barred) *with Southfield Educ. Assoc. v. Bd. of Educ. of Southfield Pub. Schs.*, No. 17-11259, 2018 WL 1509190, at *10–11 (E.D. Mich. Mar. 27, 2018) (barred); *Willhauck .v. Halpin*, 953 F.2d 689, 705–07 (1st Cir. 1991) (barred).

15

But the State's contention is not persuasive in light of the North Carolina Supreme Court's narrow application of claim preclusion.

Gift Surplus has filed this federal action raising constitutional claims that were neither raised in its prior state pleadings nor properly predicated upon them. The constitutional claims concern a distinct wrong leading to a distinct injury than Gift Surplus' claims in prior state-court litigation. For those reasons, Gift Surplus' constitutional claims are not barred by claim preclusion under North Carolina law.

**B. Issue Preclusion**

Issue preclusion applies where: (1) an earlier suit resulted in a final judgment on the merits, (2) the issue in question is identical to an issue actually litigated and necessary to the judgment, and (3) the defendant and plaintiff were either parties to the earlier suit or were in privity with the parties. *See Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558–59, 681 S.E. 770, 773–74 (2009). Issue preclusion applies more narrowly than claim preclusion since the issue in the subsequent action must be "identical to an issue *actually litigated* and necessary to the judgment." *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 414, 474 S.E.2d 127, 128–29 (1996) (emphasis added) (cleaned up); *accord Johnson v. Starboard Ass'n, Inc.*, 244 N.C. App. 619, 627–29, 781 S.E.2d 813, 819–20 (2016).

Here, issue preclusion does not apply because the constitutionality of § 14-306.4 was not actually litigated in Gift Surplus' prior lawsuit in state court. In the state-court litigation, the issue actually litigated was whether Gift Surplus' video sweepstakes complied with § 14-306.4. *See Gift Surplus I*, 380 N.C. at 2. The state court did not

16

decide in that litigation whether the statute violates the First Amendment or is void for vagueness.

## C. Privity

The State does not contend that No Limit Games' claims are barred by claim preclusion or issue preclusion. The State does, however, contend that it may need discovery to assess whether No Limit Games and Gift Surplus are in privity. Doc. 42 at 8. Had claim preclusion or issue preclusion applied to Gift Surplus' claims then privity would have been relevant; if No Limit Games was in privity with Gift Surplus, then No Limit Games' claims would have been barred too. *See Thornburg*, 325 N.C. at 468 (claim preclusion); *Turner*, 363 N.C. at 558–59 (issue preclusion). But since Gift Surplus' claims are not barred by claim preclusion or issue preclusion, discovery as to privity between No Limit Games and Gift Surplus is not necessary.

## VIII. Standing

In order to bring suit and prevail in federal courts, there must be a real case or controversy. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Because the plaintiffs invoke federal jurisdiction, they bear the burden of showing that they have "a personal stake in the outcome—in other words, standing." *Id.*; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiffs must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *see also TransUnion*, 141 S. Ct. at 2208. When the case reaches ultimate disposition, whether at summary judgment or at trial, standing must be shown by

17

evidence; reliance on allegations is insufficient. *Lujan*, 504 U.S. at 561 (summary judgment); *TransUnion*, 141 S. Ct. at 2208 (trial).

Gift Surplus has established that it has a personal stake in the outcome of this litigation. Law enforcement throughout the state have targeted its video game kiosks, Doc. 31 at ¶ 98, charging dozens of business owners offering their video game kiosks with crimes under § 14-306.4 and seizing hundreds of kiosks. *Id.* at ¶¶ 101, 103, 107.[4] Even while enforcement of the statute was stayed during Gift Surplus' state court litigation, law enforcement continued to threaten enforcement of the statute against Gift Surplus, *id.* at ¶¶ 142–43; Doc. 1-3, and those threats have increased. Doc. 1-3 at 2–3 (letters warning that enforcement would resume in light of the North Carolina Supreme Court's decision in *Gift Surplus I*). The "certainly impending" enforcement of the statute against Gift Surplus and its clients, and the threatened seizure of assets and effective shutdown of its primary marketing mechanism shows injury-in-fact. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up); *see also Kenny v. Wilson*, 885 F.3d 280, 287–88 (4th Cir. 2018) (noting ongoing or future injury in fact is required for a plaintiff seeking injunctive relief). And its injury is redressable by a favorable decision on its request for injunctive relief. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (discussing elements of standing).

---

[4] Gift Surplus included a verification of its amended complaint by Mark Nizdil, an independent contractor and consultant for Gift Surplus, in which he testified he had personal knowledge to the allegations relevant here. Doc. 31 at 70. "[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

During a hearing, the State contended that under *Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982), Gift Surplus does not have standing because its conduct is clearly proscribed by § 14-306.4. Doc. 42 at 20. But *Village of Hoffman Estates* dealt with the merits of a vagueness claim, not standing to assert the vagueness claim. 455 U.S. at 495. And the State did not proffer any reasons Gift Surplus would not have standing to assert its First Amendment claim.

Because Gift Surplus has standing to assert its constitutional claims on the merits, the court need not assess whether No Limit Games has standing. The Supreme Court and the Fourth Circuit have made clear that "once it is established that at least one party has standing to bring [a] claim, no further inquiry is required as to another party's standing to bring that claim." *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 209 (4th Cir. 2020); *see also Horne v. Flores*, 557 U.S. 433, 446–47 (2009); *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) ("Because we find [one of the plaintiffs] has standing, we do not consider the standing of the other plaintiffs.").

## IX.    First Amendment

The plaintiffs assert a facial First Amendment challenge, contending § 14-306.4 is a content-based restriction on speech and is overbroad. Doc. 31 ¶¶ 2, 160. But the statute regulates conduct—not speech—and it has a legitimate scope that outweighs any concerns of overbreadth. Section 14-306.4 does not violate the First Amendment.

### A. First Amendment Free Speech Analysis

In deciding whether a statute imposes an unconstitutional restriction on speech, courts ask three questions. First, does the statute regulate speech or conduct? Second, if

19

the statute regulates speech, what level of scrutiny applies? And third, has the party with the burden made the requisite showing applying the appropriate level of scrutiny? *See PETA v. Stein*, 466 F. Supp. 3d 547, 566 (M.D.N.C. 2020) (collecting cases), *appeal filed*, No. 20-1807 (4th Cir. July 24, 2020); *see also Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

### i. Speech or conduct?

The First Amendment guarantees that "Congress shall make no law . . . abridging the freedom of speech," U.S. Const. amend. I, and this "bedrock constitutional protection is made applicable to the states by the Fourteenth Amendment." *Billups v. City of Charleston*, 961 F.3d 673, 682 (4th Cir. 2020). The First Amendment's prohibition on restrictions of free speech "means that government generally has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Barr v. Am. Assoc. of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (cleaned up)

The First Amendment, however, does not protect "nonexpressive conduct" or prohibit "restrictions directed at . . . conduct [that] impos[es] incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011); *see also Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 62 (2006). Still, laws that are conduct-based may be entitled to First Amendment protections "where the conduct itself communicates a message, the conduct has an expressive element, or where the conduct is intertwined with protected First Amendment activity." *See Amador v. Mnuchin*, 476 F. Supp. 3d 125, 153 (D. Md. 2020) (cleaned up) (collecting cases).

20

Applying these concepts, the Supreme Court has held that video games, like other forms of entertainment, are protected speech. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790–91 (2011). On the other hand, gambling statutes regulate conduct and do not invoke First Amendment protection merely because they involve the occasional use of speech, such as saying the word "Bingo" when a participant wins. *See There to Care, Inc. v. Comm'r of Ind. Dep't of Revenue,* 19 F.3d 1165, 1167 (7th Cir. 1994); *Hest*, 366 N.C. at 300. Indeed, "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978) (cleaned up). The plaintiffs bear the burden of proving § 14.306-4 restricts speech. *See Reynolds v. Middleton*, 779 F.3d 222, 226 (4th Cir. 2015).

Here, § 14-306.4 regulates conduct: conducting a sweepstakes that uses video games of chance to award prizes. The statute does not restrict the plaintiffs from offering video games, along with any accompanying message protected by the First Amendment, to the public. Instead, it prohibits conducting a sweepstakes involving video games of chance that resemble gambling. *See* § 14-306.4(b), (a)(3)(i). and (a)(5) ("[I]t shall be unlawful . . . [to] place into operation, [a] machine or device to . . . [c]onduct a sweepstakes" that offers "through the use of an entertaining display," such as a "video game not dependent on skill or dexterity," the opportunity to "win or become eligible to receive any prize . . . based upon chance."). This is conduct regulation, not speech regulation. *See Hest*, 366 N.C. at 296; *Allied Veterans of the World, Inc. v. Seminole*

21

*Cnty.*, 783 F. Supp. 2d 1197, 1202 (M.D. Fla. 2011) (evaluating similar statute and finding it regulates conduct);[5] *Telesweeps of Butler Valley, Inc. v. Kelly*, No. 12-CV-1374, 2012 WL 4839010, at *6–9 (M.D. Pa. Oct. 10, 2012) (same), *aff'd*, 537 F. App'x 51 (3d Cir. 2013); *Crisante v. Coats*, No. 11-CV-2007, 2012 WL 1565424, at *10–11 (M.D. Fla. May 2, 2012) (same); *City Cyber Cafe, LLC v. Coakley*, No. 12-4194, 2012 WL 6674481, at *6 (Mass. Super. Ct. Dec. 17, 2012) (same).

The plaintiffs contend that "operating" a video sweepstakes is analogous to the conduct of "selling or renting" violent video games to minors or the "distribution" of simulated child pornography, to which the Supreme Court applied heightened scrutiny under the First Amendment. *See Brown*, 564 U.S. at 799; *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 257–58 (2002). But in *Brown* and *Free Speech Coalition*, the laws were directed to limiting access to protected speech—violent video games and simulated child pornography. As noted *supra*, § 14-306.4 does not restrict customers from accessing video games of chance, which can be offered, distributed, and sold to the general public without violating the ordinance. Only when coupled with the conduct of awarding prizes through a video sweepstakes do video games of chance fall within § 14-306.4's ambit.

### ii. What is the appropriate level of scrutiny?

---

[5] The cited decision predates the Supreme Court's decision in *Brown*, but the court later determined in *Allied Veterans of the World, Inc. v. Seminole Cnty.*, No. 11-CV-155, 2011 WL 3958437, at *1 (M.D. Fla. Sept. 8, 2011) that *Brown*, 564 U.S. at 790–91, did not change its conclusion that a Florida law prohibiting simulated gambling devices regulated conduct and not speech. The Eleventh Circuit affirmed, although it did not directly address whether the statute regulated conduct or speech. *See Allied Veterans of the World v. Seminole Cnty.*, 468 F. App'x 922, 923–24 (11th Cir. 2012).

Because § 14-306.4 regulates nonexpressive conduct that only incidentally burdens speech, First Amendment protections do not apply. *See Rumsfeld*, 547 U.S. at 65–66; *Sorrell*, 564 U.S. at 567. Thus, rational basis review is appropriate, *see City of Dallas v. Stanglin*, 490 U.S. 19, 23–25 (1989) (applying rational basis review after finding no First Amendment rights were abridged); *Adventure Comm'cns, Inc. v. Ky. Registry of Election Fin.*, 191 F.3d 429, 440 (4th Cir. 1999) (same), which requires that a law is rationally related to a legitimate state interest. *See Am. Entertainers, LLC v. City of Rocky Mount*, 888 F.3d 707, 723 (4th Cir. 2018).

Gift Surplus contends that strict scrutiny is appropriate because § 14-306.4 only regulates video games of chance and is therefore a content-based restriction on speech. Doc. 40 at 21–22. But as noted *supra*, § 14-306.4 regulates nonexpressive conduct, not speech. The statute is not a content-based regulation on speech. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (defining content-based laws as "those that target speech based on its communicative content").

### iii. Has the party bearing the burden under the appropriate level of scrutiny met it?

Applying rational basis review, § 14-306.4 is rationally related to a legitimate state interest. The state has a legitimate government interest in regulating pretextual gambling to combat the social ills of gambling-like activities. *See Hest*, 366 N.C. at 301; *see also WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 302 (4th Cir. 2009) (noting the Supreme Court has "consistently recognized that governments have a substantial interest in reducing the negative effects of gambling"). In passing the

law, the state legislature targeted video sweepstakes that serve as a pretext for gambling, noting § 14-306.4 regulated video sweepstakes that encourage the same "vice and dissipation as other forms of gambling . . . by encouraging repeated play, even when allegedly used as a marketing technique." Act of July 20, 2010, N.C. Sess. Law 2010-103, pmbl.

The state legislature's concerns over pretextual gambling were borne out in the context of Gift Surplus' game. The North Carolina Supreme Court pointed to evidence that the target demographic of Gift Surplus is low-income customers and that customers at one video game kiosk threw away over $10,000 in e-credits to use at Gift Surplus' e-commerce store. *Gift Surplus I*, 380 N.C. at 4, 6. Section 14-306.4 is designed to curb that sort of repetitive play and the "vice and dissipation" associated with gambling, and its prohibition on pretextual gambling—conducting video sweepstakes using video games of chance to award prizes—is rationally related to that interest.

## B. Overbreadth

A plaintiff asserting a facial challenge will prevail if a statute is "impermissibly overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (cleaned up). The overbreadth doctrine is applied "sparingly and only as a last resort" because it involves invalidating a law based on its hypothetical application to situations not before a court. *See FCC v. Pacifica Found.*, 438 U.S. 726, 743 (1978); *United States v. Williams*, 553 U.S. 285, 293 (2008) (noting "[i]nvalidation for overbreadth is strong medicine that is not to be casually

24

employed") (cleaned up). This is particularly so when a statute regulates harmful and constitutionally unprotected conduct. *See Virginia v. Hicks*, 539 U.S. 113, 119–20 (2003).

Section 14-306.4 regulates unprotected conduct and not speech, and Gift Surplus has not shown that the law is facially overbroad. The law regulates only the conduct of operating video sweepstakes that use video games of chance to award prizes, and any concerns of potential overbreadth are outweighed by the law's plainly legitimate sweep. *See Wash. State Grange*, 552 U.S. at 449 n.6.

In any event, Gift Surplus' contentions the statute is overbroad are without merit. Gift Surplus contends that the Statute is overbroad because it prohibits *any* sweepstakes promotion from using *any* "form of actual game play, or simulated game play." Doc. 19 at 33. But this is not so. For example, § 14-306.4 only applies to video sweepstakes conducted on an electronic machine, which is statutorily defined, as relevant here, as "a mechanically, electrically or electronically operated machine or device, that is owned, leased or otherwise possessed by a sweepstakes sponsor or promoter." N.C. Gen. Stat. § 14-306.4(a)(1). Thus, the statute does not regulate any video sweepstakes conducted on personal devices, only video sweepstakes conducted on machines "owned, leased, or otherwise possessed by a sweepstakes sponsor or promoter." *Id.*

Also, an overbreadth challenge will not succeed unless the statute is substantially overbroad, which requires the court "to find a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988)

25

(cleaned up).  While Gift Surplus contends § 14-306.4 prohibits video sweepstakes using any type of video game, not just video games of chance, it has not proffered any evidence that video sweepstakes operators use any video games aside from those that simulate a gambling experience.  There is no "realistic danger" of compromising First Amendment rights, particularly as § 14-306.4 regulates conduct and not speech.

## X.    Vagueness

The void for vagueness doctrine "is rooted in the Due Process Clause of the . . . Fourteenth Amendment[]."  *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019); *see also* U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]").   A state law is unconstitutionally vague under the Due Process Clause if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *Williams*, 553 U.S. at 304; *see also Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir. 2012).

When a statute imposes criminal penalties, "the standard of certainty is higher and the statute can be invalidated on its face even where it could conceivably have some valid application."  *Martin*, 700 F.3d at 135 (cleaned up); *see also Johnson v. United States*, 576 U.S. 591, 602 (2015) (noting a vague provision is not constitutional "merely because there is some conduct that clearly falls within the provision's grasp").  In assessing a statute challenged as void for vagueness, "[a] federal court must consider any limiting construction that a state court . . . has proffered."  *Martin*, 700 F.3d at 136 (cleaned up).

26

The requirement that a statute gives fair notice of what conduct is prohibited "enable[s] the ordinary citizen to conform his or her conduct to the law." *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999). Where a statute "fails to provide any standard of conduct by which persons can determine whether they are violating [it]," the statute violates due process and is void for vagueness. *Manning*, 930 F.3d at 274. But a statute "need not spell out every possible factual scenario with celestial precision to avoid being struck down on vagueness grounds." *United States v. Hager*, 721 F.3d 167, 183 (4th Cir. 2013) (cleaned up).

Here, § 14-306.4 contains clear standards that provide fair notice of the conduct that is prohibited by the law. The North Carolina Supreme Court has adopted a broad interpretation of the statute's reach, *see Gift Surplus I*, 380 N.C. at 10, but the fact that a statute is broad does not necessarily mean the law is unconstitutionally vague. *See United States v. Lindberg*, 476 F. Supp. 3d 240, 261 (W.D.N.C. 2020).

The express terms of § 14-306.4 and subsequent judicial interpretations of the statute define the prohibited conduct. Under the statute, a video sweepstakes is unlawful if a person "operate[s], or place[s] into operation, an electronic machine or device to . . . [c]onduct a sweepstakes through the use of an entertaining display," § 14-306.4(b), and an "entertaining display" is defined as including any "video game not dependent on skill or dexterity." § 14-306.4(a)(3). The North Carolina Supreme Court has held consistently that a game is not dependent on skill or dexterity where chance predominates, so that the statute prohibits video sweepstakes conducted through video games of chance. *See Sandhill Amusements*, 368 N.C. at 91 (adopting dissent's reasoning in *Sandhill*

27

*Amusements*, 236 N.C. App. at 369–70 (Ervin, J., dissenting)); *Crazie Overstock*, 377 N.C. at 403; *Gift Surplus I*, 380 N.C. at 10.

In the context of § 14-306.4, the predominant-factor test assesses "whether, viewed in its entirety, the results produced by [an electronic gaming device] in terms of whether the player wins or loses and the relative amount of the player's winnings or losses varies primarily with the vagaries of chance or the extent of the player's skill and dexterity." *Crazie Overstock*, 377 N.C. at 403; *see also Gift Surplus I*, 380 N.C. at 10. This comprehensible standard gives video-sweepstakes operators fair notice that a video sweepstakes is illegal if chance predominately determines whether a video sweepstakes player wins or loses and the relative amount the player wins or loses.

The plaintiffs contend § 14-306.4 is unconstitutionally vague because it is unclear what video sweepstakes could be operated that comply with the statute. Doc. 32 at 10. But as noted *supra*, "a statute need not spell out every possible factual scenario with celestial precision to avoid being struck down on vagueness grounds." *Hager*, 721 F.3d at 183 (cleaned up). It is enough that an ordinary citizen has fair notice of what conduct is proscribed. And here, it is clear that a video sweepstakes is prohibited if chance predominately determines whether a video sweepstakes player wins or loses or the relative amount the player wins or loses.

The plaintiffs next maintain that the North Carolina Supreme Court has interpreted the statute in an internally irreconcilable manner because it has ruled that not all video sweepstakes are prohibited while also establishing a standard that makes it impossible to offer a legal video sweepstakes. Specifically, they contend that a video sweepstakes is

28

required to award prizes based upon chance under the statute, but the North Carolina Supreme Court has held a video sweepstakes violates the law if chance determines the prizes for which players may play. *See* Doc. 32 at 9–10; *see also Gift Surplus I*, 380 N.C. at 13.[6]

But this argument overstates the holdings in *Gift Surplus I* and *Crazie Overstock*—the North Carolina Supreme Court has never held that skill and dexterity must be the sole basis for winning a game or for winning a prize. Chance cannot predominately determine whether a sweepstakes player wins or loses or the relative amount of the player's winnings or losses. *Gift Surplus I*, 380 N.C. at 10. And so long as chance is a factor, a game is a sweepstakes under the statute, and if chance does not predominate, it can be lawful.

In *Gift Surplus I*, 380 N.C. at 13–14, and *Crazie Overstock*, 377 N.C. at 404, the North Carolina Supreme Court held that the video sweepstakes operators' particular games were unlawful because, regardless of the skill or dexterity exhibited by players in the game, they were ineligible for certain prizes. In *Gift Surplus I*, 75% of video sweepstakes players were automatically ineligible for more than a nominal prize, 380 N.C. at 13–15, and in *Crazie Overstock*, the results of a randomized reel-spinning game determined the prizes for which a player could play. 377 N.C. at 393, 404. Thus, chance would always predominate over skill and dexterity in both video sweepstakes. But those

---

[6] According to the plaintiffs, "[t]he [North Carolina] Supreme Court has stated three things that cannot all be true: (1) some video sweepstakes are legal; (2) a sweepstakes is [statutorily] defined as 'any game a person may enter to win any prize, the determination of which is based upon chance;' and (3) the prize in a video-sweepstakes may not be determined based on chance." Doc. 32 at 9–10.

holdings do not stand for the proposition that any video sweepstakes with a prize influenced by an element of chance is illegal. While the North Carolina Supreme Court's standard—chance may not predominately determine whether a video sweepstakes player wins or loses or the relative amount the player wins or loses—may make it hard for the plaintiffs to profitably offer such a video sweepstakes, it is not vague.

The plaintiffs also assert that § 14-306.4 allows government officials unbridled enforcement discretion, because it is applies to video sweepstakes attempting to avoid its application through "subterfuge or pretense." Doc. 40 at 28–29. Gift Surplus maintains this provision allows law enforcement to determine, without standards, that attempted compliance is actually "subterfuge or pretense." *Id.* at 28.

But the statute's reach is limited to defined conduct: conducting a sweepstakes that uses video games of chance to award prizes. It is not so standardless as to permit arbitrary enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 358 (1983); *Manning*, 930 F.3d at 276–77. The "subterfuge and pretense" provision codifies a rule of judicial construction used by North Carolina courts to look to the "substance and not to the form" of a game when determining if it is an unlawful game of chance. *Hest*, 366 N.C. at 290 (quoting *State v. Lipkin*, 169 N.C. 265, 271, 84 S.E. 340, 343 (1915)); *see also Gift Surplus I*, 380 N.C. at 3. And given the state legislature's finding that "companies have developed electronic machines and devices to gamble through pretextual sweepstakes," Act of July 20, 2010, N.C. Sess. Law 2010-103, pmbl., the "subterfuge and pretense" provision is a valuable statement of legislative intent for courts construing the statute's scope.

30

Section 14-306.4 may prohibit a broad range of video sweepstakes, but that does not mean it is unconstitutionally vague. The statute contains standards and definitions that provide fair notice as to the conduct it prohibits and it does not permit arbitrary enforcement. The law is not void for vagueness under the Fourteenth Amendment's Due Process Clause.

## XI. Conclusion

While the Court has subject matter jurisdiction over the plaintiffs' claims and neither claim preclusion nor issue preclusion apply, the State prevails on the merits. Section 14-306.4 regulates nonexpressive conduct, not speech, and thus it does not violate the First Amendment. And the law is not void for vagueness because it contains definitions and standards that provide fair notice of the conduct it proscribes and it does not encourage arbitrary enforcement.

It is **ORDERED** that:

1. The plaintiffs' motion for preliminary injunction, Doc. 5, is converted to a motion for permanent injunction and **DENIED**.

2. The plaintiffs' oral motion for summary judgment is **DENIED**.

3. The defendants' motion to dismiss, Doc. 35, is converted to a motion for summary judgment and **GRANTED**.

4. Judgment will be entered separately as time permits.

This the 7th day of June, 2022.

UNITED STATES DISTRICT JUDGE